IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-02431-WDM-CBS

BENAD ABIODUN,
    Plaintiff,
v.

ROBERT LINDLEY,
ALEJANDRO ALMEIDA,
    Defendants.
_____

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

Magistrate Judge Craig B. Shaffer

    This civil action comes before the court on: (1) "Plaintiff's Motion for Preliminary Injunction" (filed January 22, 2008) (doc. # 15); and (2) "Respondents' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(5)" (filed April 4, 2008) (doc. # 31). Pursuant to the Order of Reference dated January 2, 2008 (doc. # 8) and the memoranda dated January 24, 2008 (doc. # 16) and April 7, 2008 (doc. # 32), these matters were referred to the Magistrate Judge. The court has reviewed the Motions, Mr. Abiodun's "Memorandum of Law in Opposition to Respondents' Motion to Dismiss . . ." ("Response") (doc. # 35), the entire case file, and the applicable law and is sufficiently advised in the premises.

I.    Statement of the Case

    Proceeding *pro se*, Mr. Abiodun brought his Complaint pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) against six Defendants. (*See* Complaint (doc. # 3) at p. 4 of 27). On December 14, 2007, the court dismissed all but Mr. Abiodun's Claim Three against Defendants Lindley and Almeida. (*See* "Order to Dismiss in Part . . ." (doc. # 4); *see also* "Order on Motion to Alter or Amend" (doc. # 18) (denying Mr. Abiodun's request to "reconsider and vacate [the]

1

order of [partial] dismissal")). In his single remaining claim, Mr. Abiodun alleges that Defendants retaliated against him for filing administrative claims and lawsuits by "transferring the Plaintiff back and forth between ICE Processing Center, Aurora, Colorado and Park County Jail, Fairplay, Colorado without any penological reason" and that he was "assault[ed]" by Defendant Lindley when Officer Lindley held the Plaintiff by his right hand and forced the Plaintiff's fingerprints on" ICE forms. (*See* Complaint (doc. # 3) at pp. 16-18 of 27).

Mr. Abiodun has filed a Motion for Preliminary Injunction. Defendants have moved to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(5) for lack of personal jurisdiction, based on insufficiency of service of process.

II.     Motion to Dismiss

A.      Standard of Review

Pursuant to Rule 12(b)(5), the court may dismiss a complaint for insufficient service of process. *See* 5B Fed. Prac. & Proc. Civ. 3d § 1353 (2008 Supp.) ("A Rule 12(b)(5) motion is the proper vehicle for challenging" the sufficiency of the service of process, *i.e.*, "the mode of delivery or lack of delivery of the summons and complaint."). Examples of insufficient service include serving the wrong person or serving an individual not authorized to accept service for a defendant. "In opposing a motion to dismiss for insufficient service of process, plaintiff bears the burden to make a prima facie case that he has satisfied statutory and due process requirements so as to permit the court to exercise personal jurisdiction over defendant." *Fisher v. Lynch*, 531 F. Supp. 2d 1253, 1260 (D. Kan. 2008). "The parties may submit affidavits and other documentary evidence for the Court's consideration, and plaintiff is entitled to the benefit of any factual doubt." *Id.*

B.  Analysis

Mr. Abiodun sues Defendants in their individual capacities pursuant to *Bivens*, 403 U.S. at 388. As no waivers of service have been filed with the court, Mr. Abiodun must comply with the service requirements of Fed. R. Civ. P. Rule 4(e) which governs service on individuals. Rule 4(e) provides that service may be effected by personal delivery, delivery at the individual's dwelling house or usual place of abode, delivery on the individual's authorized agent, or pursuant to the laws of the State of Colorado.[1]

Defendants correctly assert that they have not been served in compliance with Fed. R. Civ. P. 4(e). Specifically, Dani Page was served at 5445 DTC Parkway, Suite 220, Englewood, Colorado 80011. (*See* docs. # 13 and # 14). Dani Page is not a

---

[1] An individual may be served in a judicial district of the United States by:

(1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or

(2) doing any of the following:

(A) delivering a copy of the summons and of the complaint to the individual personally;

(B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or

(C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e).

Colorado law provides for service upon individuals as follows:

(e) Personal Service. Personal service shall be as follows:

(1) Upon a natural person whose age is eighteen years or older by delivering a copy thereof to the person, or by leaving a copy thereof at the person's usual place of abode, with any person whose age is eighteen years or older and who is a member of the person's family, or at the person's usual workplace, with the person's secretary, administrative assistant, bookkeeper, or managing agent; or by delivering a copy to a person authorized by appointment or by law to receive service of process.

person authorized to accept service of process for either of the Defendants. (*See* Declarations of Defendants Almeida and Lindley (docs. # 31-2 and # 31-3)). Defendants were not personally served at their dwellings or through an authorized agent. Service on Dani Page does not comply with any method of service described under Rule 4(e) or Colorado law.

Nevertheless, Fed. R. Civ. P. Rule 4(m) provides in pertinent part

> [i]f a defendant is not served within 120 days after the complaint is filed, the court -- on motion or on its own after notice to the plaintiff -- must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

The 120-day period to effect service upon Defendants has expired. Rule 4(m) does not specifically define "good cause." The Advisory Committee Notes to Rule 4 provide examples of grounds to relieve a plaintiff from the consequences of Rule 4(m), such as "to protect pro se plaintiffs from consequences of confusion or delay attending the resolution of an in forma pauperis petition." Notes of Advisory Committee on Rules, 1993 Amendments to Fed. R. Civ. P. 4(m). Whether the plaintiff establishes good cause for failure to timely serve a summons and complaint is a discretionary determination entrusted to the court. The plaintiff bears the burden of showing good cause. *Winters v. Teledyne Movible Offshore, Inc.*, 776 F.2d 1304, 1305 (5th Cir. 1985) (Rule 4 "plainly places the burden on the plaintiff to show good cause") (citations omitted).

Mr. Abiodun responds that "[h]e filed this lawsuit in this Court in forma pauperis status." (*See* Response (doc. # 35) at p. 7 of 15). "He provided this Court with the Respondents' last known official addresses" and "relied on the effort of this Court through the United States Marshal for the service of summons and complaints on the Respondents . . . ." (*See id*). As Mr. Abiodun is proceeding *in forma pauperis* pursuant to 28 U.S.C. § 1915, the court ordered service of the Complaint on Defendants by the

United States Marshal.  (*See* January 4, 2008 "Order Granting Service by United States Marshal" (doc. # 9)).  Mr. Abiodun provided Defendants' addresses at their place of employment as "DHS, 4730 Paris Street, Denver, Colorado 80237."  (*See* Complaint (doc. # 3) at p. 3 of 27; *see also* doc. # 9-2).

A representative of the U.S. Marshal served "Dani Page (Deputy Chief Counsel) "at 5445 DTC Parkway, Suite 220, Englewood, Colorado 80011."  (*See* docs. # 14, # 13, and # 9-2).  The deficiency in service was caused by the U.S. Marshal because service was not in accordance with the Federal Rules of Civil Procedure or Colorado law.  As long as Mr. Abiodun provided adequate information for Defendants to be identified and served, a complaint should not be dismissed for the Marshal's failure to effectuate proper service.  *See Graham v. Satkoski*, 51 F.3d 710, 713 (7th Cir. 1995) ("The prisoner may rely on the Marshals Service to serve process, and the Marshals Service's failure to complete service is automatically 'good cause' . . . under Rule 4(m)");  *Puett v. Blandford*, 912 F.2d 270, 274-75 (9th Cir. 1990) ("[A]n incarcerated pro se plaintiff proceeding in forma pauperis is entitled to rely on the U.S. Marshal for service of the summons and complaint, and, having provided the necessary information to help effectuate service, plaintiff should not be penalized by having his or her action dismissed for failure to effect service where the U.S. Marshal or the court clerk has failed to perform the duties required of each of them . . . .").  Defendants concede that "[t]here are proper means by which Abiodun could accomplish service," such as a waiver pursuant to Fed. R. Civ. P. 4(d)(1) or by personal service on the Defendants.  (*See* Motion to Dismiss (doc. # 31) at p. 5 of 9 n. 2).  The court concludes that Mr. Abiodun should be afforded an extension of time for proof of effective service and that Defendants Motion to Dismiss for lack of personal jurisdiction is properly denied at this time.

III.   Motion for Preliminary Injunction

A.   Standard of Review

As injunctive relief, Mr. Abiodun asks the court to "order Defendants, agents, employees and all persons acting in concert with them to stop harassing, transferring and assaulting the Plaintiff pending the hearing and determination of this matter . . . ." (*See* Motion for Preliminary Injunction (doc. # 15) at pp. 7-8 of 10). In order to be entitled to a preliminary injunction or a temporary restraining order pursuant to Fed. R. Civ. P. 65, the moving party must establish: "(1) a substantial likelihood of success on the merits of the case; (2) irreparable injury to the movant if the preliminary injunction is denied; (3) the threatened injury to the movant outweighs the injury to the other party under the preliminary injunction; and (4) the injunction is not adverse to the public interest." *Kikumura v. Hurley,* 242 F.3d 950, 955 (10th Cir. 2001) (citation omitted). "As a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal." *SCFC ILC, Inc. v. Visa USA, Inc.*, 936 F.2d 1096, 1098 (10th Cir. 1991) (citation omitted).

"Because the limited purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held, we have identified the following three types of specifically disfavored preliminary injunctions . . . : (1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits." *Schrier v. Univ. of Colo.,* 427 F.3d 1253, 1258-59 (10th Cir. 2005) (internal quotation marks and citations omitted). The relief sought by Mr. Abiodun would afford him the same relief sought in the Complaint and that he could recover after a full trial on the merits. "Such disfavored injunctions must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." *Schrier*, 427 F.3d

6

at 1259 (internal quotation marks and citation omitted).

B.      Analysis

   1.      Substantial Likelihood of Success on the Merits of the Case

Mr. Abiodun has not demonstrated a substantial likelihood of success on the merits. The facts giving rise to Mr. Abiodun's Complaint have previously been recounted in detail.

> Benad Abiodun is in both state and federal custody. The Colorado Department of Corrections supervises his parole for a state drug conviction, while the Bureau of Immigration and Customs Enforcement (ICE) has detained him in federal jail for an immigration violation. Abiodun's drug conviction in Colorado state court made him a removable alien under federal law. Thus, when Abiodun was paroled from Colorado state prison, ICE officials placed him in an immigration jail to await the conclusion of removal proceedings against him. Those proceedings determined that Abiodun should be removed by virtue of his conviction for an aggravated felony.
>
> Abiodun, an alien from Nigeria, has lived in the United States since the 1990s. His trouble with the law began in 2001. In June of that year, Abiodun sold cocaine to undercover agents on two separate occasions. He was subsequently charged and convicted of two counts of possession and two counts of distribution of a controlled substance. *See People v. Abiodun*, 111 P.3d 462, 464 (Colo.2005). He was sentenced to four concurrent four-year terms of imprisonment, as well as five-years mandatory parole. *Id*. On appeal, the Colorado Court of Appeals determined the offenses of possession and distribution merged under Colorado state law. The court therefore vacated Abiodun's two convictions for possession, while simultaneously affirming his two convictions for distribution. *Id*. The Colorado Supreme Court affirmed the court of appeals's decision in 2005. *Id*.
>
> Upon learning of Abiodun's drug conviction, ICE officials began removal proceedings against him. As an alien convicted of an aggravated felony, he was removable from the United States under 8 U.S.C. § 1227(a). *See Abiodun v. Gonzales*, 461 F.3d 1210, 1215 (10th Cir.2006). Abiodun's parole from Colorado state prison began on December 30, 2004. *Id*. at 1212. Federal immigration authorities immediately took him into custody. *Id*. Five months later, an immigration judge ordered Abiodun removed from the United States to his homeland of Nigeria. *Id*. at 1214. The Board of Immigration Appeals (BIA) affirmed the removal order. This court has twice reviewed the BIA's order, and twice affirmed it. *See id*. at 1218; *Abiodun v. Gonzales*, 217 Fed.Appx. 738, 742-43 (10th Cir.2007).

*Abiodun v. Maurer*, 257 Fed. Appx. 111, 113-14 (10th Cir. Dec. 4, 2007).

In his motion for injunctive relief, Mr. Abiodun addresses at length matters relating to his previous lawsuits and claims challenging his status as a removable alien and the manner in which federal immigration officials reviewed his petition for naturalization, and not relating to his single remaining claim for retaliation. (*See, e.g.*, Motion for Preliminary Injunction (doc. # 15) at p. 2 of 10 ("Plaintiff states that his Bivens Action stems out of his claim of procedural irregularities in the determination of his citizenship by the District Director of Department of Homeland Security.")). Preliminary injunctive relief would be inappropriate to address wrongs unrelated to the only claim remaining in this case. *See Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) ("a party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint"); *Penn v. San Juan Hospital, Inc.*, 528 F.2d 1181, 1185 (10th Cir. 1975) (stating that one seeking a preliminary injunction must present "clear proof that he will probably prevail when the merits are tried, so to this extent there is a relation between temporary and permanent relief") (citations omitted); *De Beers Consol. Mines v. United States*, 325 U.S. 212, 220 (1945) (a preliminary injunction grants intermediate relief of the same character as that which may be finally granted).

Further, Mr. Abiodun's allegation that immigration officials did not fairly adjudicate his petition for naturalization "has already been raised and decided against Abiodun at least twice" and "deem[ed] an abuse of the writ." *Abiodun v. Mukasey*, No. 07-1266, 2008 WL 360604 at * 2 (10th Cir. Feb. 11, 2008), *cert. denied*, 2008 WL 675752 (U.S. May 12, 2008) (citations omitted). Likewise, Mr. Abiodun's challenge to his status as a removable alien "has already been determined adversely to him." *Id.* As to his status as a removable alien and the manner in which federal immigration officials reviewed his petition for naturalization, Mr. Abiodun has not demonstrated any likelihood of success on the merits.

Prison "officials may not retaliate against or harass an inmate because of the inmate's exercise of his constitutional rights . . . even where the action taken in retaliation would be otherwise permissible." *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir.1998) (internal quotation marks and citation omitted). Nevertheless, "an inmate is not inoculated from the normal conditions of confinement . . . merely because he has engaged in protected activity." *Id.* "[I]n order to establish a First Amendment retaliation claim, a prisoner must demonstrate that he was (1) engaged in protected conduct; (2) that he suffered an adverse action; and (3) that a causal connection exists between the protected conduct and the adverse action." *Scott v. Churchill*, 377 F.3d 565, 569 (6th Cir. 2004) (citation omitted). *See also Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003) ( "To state a valid claim for retaliation under § 1983, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." "[T]he causation is understood to be but-for causation, without which the adverse action would not have been taken." *Hartman v. Moore*, 547 U.S. 250, 260 (2006). "[A] plaintiff must prove that but for the retaliatory motive, the incidents to which he refers, . . . would not have taken place." *Peterson*, 149 F.3d at 1144 (internal quotation marks and citation omitted).

For purposes of injunctive relief, Mr. Abiodun has not sufficiently established that a causal connection exists between his protected conduct and any adverse action. Mr. Abiodun states merely generalized allegations of "verbal and telephone harassment, transfer, and assault for filing administrative claim pursuant to 28 U.S.C. § 2675, Bivens and FTCA Actions . . . ." (*See* doc. # 15 at pp. 4-6 of 10). Mr. Abiodun does not allege who committed the alleged acts, when or where such acts were committed, or any of the specific circumstances. Mr. Abiodun has not alleged the basis of Defendants' knowledge of his protected activity or any temporal relationship between his protected

activity and the transfers.  Mr. Abiodun has not shown that Defendants acted based on any retaliatory motive or that but for a retaliatory motive any of the alleged actions would not have occurred.  The record before the court does not establish a substantial likelihood of success on the merits.

### 2. Irreparable Harm

Mr. Abiodun must also show that he will suffer irreparable injury if his request for injunctive relief is denied.  "To constitute irreparable harm, an injury must be certain, great, actual and not theoretical."  *Schrier*, 427 F.3d at 1267 (citation omitted).  "The party seeking injunctive relief must show that the injury complained of is of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm."  *Schrier*, 427 F.3d at 1267 (internal quotation marks and citation omitted).

Mr. Abiodun's allegations fall short of showing that he will suffer immediate and irreparable harm in the absence of the relief sought.  By this lawsuit, Mr. Abiodun seeks only damages.  (*See* Complaint (doc. # 3) at p. 26 of 27) (requesting "actual," "compensatory," and "punitive" damages).  If Mr. Abiodun were to prevail on his claims on the merits, he may be awarded his monetary damages.  By the filing of the Complaint Mr. Abiodun has availed himself of an adequate remedy at law in the form of damages for any violation he may have suffered.  Mr. Abiodun fails to demonstrate that his alleged injuries are not capable of being fully remedied by money damages.  *See Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1250 (10th Cir. 2001) (no irreparable harm when the injury can "be adequately atoned for in money").  Further, Mr. Abiodun seeks injunctive relief based on past incidents of retaliation.  "The purpose of a preliminary injunction is not to remedy past harm but to protect plaintiffs from irreparable injury that will surely result without their issuance."  *Schrier*, 427 F.3d at

1267. Mr. Abiodun contends that he should not be subjected to unspecified "on-going retaliation." (*See, e.g.*, Motion for Preliminary Injunction (doc. # 15) at p. 6 of 10). Mr. Abiodun's suggestion is too speculative for a finding of irreparable injury.

3.  Balance of Parties' Interests and Whether Adverse to the Public Interest

Next, Mr. Abiodun must demonstrate that "the threatened injury. . . outweighs whatever damage the proposed injunction may cause the opposing party" and that "the injunction, if issued, would not be adverse to the public interest." *Schrier,* 427 F.3d at 1258. The third factor mitigates against granting an injunction.

Mr. Abiodun has not demonstrated any specific threatened injury. Further, the Supreme Court has cautioned against judicial interference with the daily administration of prisons such as the Immigration and Customs Enforcement ("ICE") Processing Center where Mr. Abiodun is detained.

> Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government. Prison administration is, moreover, a task that has been committed to the responsibility of those branches, and separation of powers concerns counsel a policy of judicial restraint.

*Turner v. Safley*, 482 U.S. 78, 84-85 (1987). Mr. Abiodun is requesting that the court monitor "Defendants, agents, employees, and all person acting in concert with them" in their daily employment activities and contacts with Mr. Abiodun. Granting Mr. Abiodun's request for oversight of such matters would involve the court in matters of prison management which would be contrary to the public interest. *See, e.g., Peterson*, 149 F.3d at 1144 ("it is not the role of the federal judiciary to scrutinize and interfere with the daily operations of a state prison, and our retaliation jurisprudence does not change this role"). As Mr. Abiodun has not established three of the four requisite elements, he is not entitled to injunctive relief.

Accordingly, IT IS RECOMMENDED that:

1. "Plaintiff's Motion for Preliminary Injunction" (filed January 22, 2008) (doc. # 15) be DENIED.

2. "Respondents' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(5)" (filed April 4, 2008) (doc. # 31) be DENIED.

3. The insufficient service (docs. # 13 and # 14) be quashed and Mr. Abiodun be afforded a reasonable period of time to file proof of service on the Defendants as follows:

    a. To the extent that Defendants' employer, the Department of Homeland Security ("DHS"), has a current address for Defendants Lindley and/or Almeida, DHS be directed to file such addresses with the court on or before a date certain. DHS may file such addresses **under seal** if appropriate.

    b. The Clerk of the Court be directed to attempt to obtain a waiver of service from Defendants pursuant to Fed. R. Civ. P. 4(d) at the addresses filed with the court.

    c. If the Clerk is unable to obtain a waiver, the United States Marshal be directed to serve a copy of the Complaint (doc. # 4) and summons upon Defendants Robert Lindley and Alejandro Almeida, with all costs of service to be advanced by the United States.

**Advisement to the Parties**

Within ten days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the

basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Property*, 73 F.3d at 1059-60 (a party's objections to the Magistrate Judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the District Court or for appellate review); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED at Denver, Colorado, this 2nd day of June, 2008.

BY THE COURT:

s/Craig B. Shaffer
United States Magistrate Judge